## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

YORMA SEGUNDO
YANEZ ARROYO,

           Petitioner,

  v.

WARDEN,

           Respondent.

CIVIL ACTION NO. 3:26-CV-01034

(MEHALCHICK, J.)

### MEMORANDUM

Petitioner, Yorma Segundo Yanez Arroyo ("Arroyo"), a citizen of Venezuela and asylum seeker, brings this *pro se* petition for writ of habeas corpus. (Doc. 1). On April 21, 2026, Arroyo filed the instant petition, requesting that Respondent Craig Lowe ("Lowe")[1] release him from custody at the Pike County Correctional Facility in Lords Valley, Pennsylvania. (Doc. 1). Arroyo also filed a motion for leave to proceed *in forma pauperis* (Doc. 2) which is conditionally **GRANTED**, and Arroyo's petition is deemed filed. (Doc. 1). On April 29, 2026, Lowe filed a response to Arroyo's petition. (Doc. 4). For the following reasons, Arroyo's petition (Doc. 1) is **GRANTED**, and Lowe is **ORDERED** to release Arroyo from custody.

### I.    FACTUAL AND PROCEDURAL BACKGROUND

The following background is derived from Arroyo's petition, Lowe's response, and the exhibits thereto. (Doc. 1; Doc. 7). Arroyo is a citizen of Venezuela who has lived in the United States since November 2023. (Doc. 1, at 3; Doc. 7, at 4). Arroyo entered the United States on

---

[1] The Court notes that Arroyo only identified the respondent as Warden of the Pike Country Correctional facility. (Doc. 1, at 1). As noted by the government's response, Lowe is the current warden. (Doc. 7, at 15).

November 4, 2023, at the Camino Real International Bridge II port of entry in Eagle Pass, Texas. (Doc. 7-2, at 2). Arroyo arrived at the port of entry with a scheduled CBP One appointment, where immigration officers served Arroyo with a notice to appear, charging Arroyo as "an immigrant not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document," and released Arroyo into the United States.[2] (Doc. 7-2, at 2; Doc. 7-3, at 1). According to Arroyo, upon entering the United States, he applied for asylum and complied with all immigration requirements. (Doc. 1, at 2).

On February 5, 2026, immigration officers encountered Arroyo at the Luzerne County Jail, after Arroyo's arrest for terroristic threats, simple assault, and harassment. (Doc. 7-4, at 2). After conducting a records check, immigration officers issued an immigration detainer and warrant for Arroyo based on probable cause indicating that Arroyo is a removable noncitizen. (Doc. 7, at 4). According to Arroyo, all charges in association with this arrest were dropped. (Doc. 1, at 6). Arroyo submits that he has no criminal record. (Doc. 1, at 2). The government does not contest Arroyo's assertions that the charges were dropped and simply contends that they encountered Arroyo on February 5, 2026 in the Lycoming County jail after he was arrested. (Doc. 7, at 4). Arroyo is currently detained at the Pike County Correctional Facility in Lords Valley, Pennsylvania. (Doc. 1, at 1). Arroyo has an immigration hearing scheduled for May 20, 2026. (Doc. 7-5).

---

[2] The CBP One program, created in October 2020, was a method in which asylum seekers could access the asylum process at ports of entry by scheduling screening appointments through a mobile application before arriving at a port of entry. CBP One: An Overview, American Immigration Council, https://www.americanimmigrationcouncil.org/fact-sheet/cbp-one-overview/. The CBP One program ended on January 20, 2025. CBP Removes Scheduling Functionality in CBP One App, U.S. Customs and Border Protection, https://www.cbp.gov/newsroom/national-media-release/cbp-removes-scheduling-functionality-cbp-one-app.

On April 21, 2026, Arroyo filed his petition. (Doc. 1). On April 29, 2026, the government filed a response. (Doc. 7). On May 5, 2026, Arroyo filed a traverse. (Doc. 8). Accordingly, this matter is ripe and ready for disposition.

## II.   LEGAL STANDARD

28 U.S.C. § 2241 governs district courts' power to grant the writ of habeas corpus. Under 28 U.S.C. § 2241(b), the writ of habeas corpus extends to petitioners "in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States." Claims where non-citizens challenge immigration enforcement-related detention "fall within the 'core' of the writ of habeas corpus and thus must be brought in habeas." *Trump v. J. G. G.*, 604 U.S. 670, 672 (2025) (quoting *Nance v. Ward*, 597 U.S. 159, 167 (2022)). "For 'core habeas petitions,' 'jurisdiction lies in only one district: the district of confinement.'" *J. G. G.*, 604 U.S. at 672. While reviewing a noncitizen's habeas petition, courts evaluate whether the government complied with regulatory, statutory, and constitutional protections for noncitizens. *See Martinez v. McAleenan*, 385 F. Supp. 3d 349 (S.D.N.Y. 2019) (finding ICE failed to comply with regulatory and constitutional notice requirements prior to detaining a non-citizen petitioner and granting the petitioner's habeas petition). A court may order a bond hearing or release if the Court determines that a noncitizen habeas petitioner is entitled to such relief under relevant constitutional or statutory protections. *See A.L. v. Oddo*, 761 F. Supp. 3d 822, 827 (W.D. Pa. 2025) (finding that a noncitizen habeas petitioner was entitled to a bond hearing under the due process clause of the Fifth Amendment); *see Cantu-Cortes v. O'Neill*, No. 25-cv-6338, 2025 WL 3171639, at *2 (E.D. Pa. Nov. 13, 2025) (finding a habeas petitioner was entitled to a bond hearing under relevant statutory protections); *see also Alexey Kashranov v. J.L. Jamison, et*

*al.*, No. 2:25-CV-05555, 2025 WL 3188399 at \*8 (E.D. Pa. Nov. 14, 2025) (finding that the appropriate remedy when the government detains a petitioner under an inapplicable statute, violating due process, is release from custody).

### III.   THE BASIS OF ARROYO'S CLAIMS

Arroyo's *pro se* petition is unclear regarding the legal theories he is challenging his detention on. (Doc. 1). However, Courts must liberally construe *pro se* filings and a *pro se* habeas petitioner should not be expected to identify a specific legal theory as counsel would be expected to so long as the *pro se* petitioner provides the Court with allegations sufficient to find a violation of their statutory or constitutional rights. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (stating "[a] document filed *pro se* is 'to be liberally construed'"); *see also Gonzalez-Leyva v. Warden, FCI Fort Dix*, No. CV 23-2715 (CPO), 2025 WL 1088120, at \*1 (D.N.J. Apr. 11, 2025) (stating "Courts hold *pro se* pleadings to less stringent standards than more formal pleadings drafted by lawyers. Courts must construe pro se habeas petitions and any supporting submissions liberally and with a measure of tolerance" (citations omitted)). Arroyo argues that he is improperly detained because he is in the United States legally, has a pending asylum claim, has work authorization, and ICE has not released him or granted him adequate due process even after his pending state charges were dropped by state courts. (Doc. 1, at 6). As the Court noted in its order to show cause, Arroyo's case appears to resemble cases in which "[c]ourts in the Third Circuit have found that [8 U.S.C. § 1226] applies to noncitizens who previously entered the country and have been residing in the United States for an extended period of time prior to being apprehended and placed in removal proceedings." (Doc. 5, at 1) (citing *Cantu-Cortes v. O'Neill*, No. 25-CV-6338, 2025 WL 3171639 at 1-2 (E.D. Pa. Nov. 13, 2025); *Kashranov*, 2025 WL 3188399 at 5; *Del Cid v. Bondi*, No. 3:25-CV-00304, 2025 WL

4

2985150 at 14-17 (W.D. Pa. Oct. 23, 2025); *Bethancourt Soto v. Soto,* No. 25-CV-16200, 2025 WL 2976572 at 4-7 (D.N.J. Oct. 22, 2025)). The Court will liberally construe Arroyo's petition to be a challenge to ICE's statutory basis to detain him and a challenge to Lowe allegedly violating his due process rights similar numerous other challenges which have recently been before the Middle District and the Court's sister courts in the Third Circuit. (Doc. 1); *see Cantu-Cortes,* 2025 WL 3171639 at 1-2; *Kashranov,* 2025 WL 3188399 at 5; *Del Cid v. Bondi,* 2025 WL 2985150 at 14-17; *Bethancourt Soto v. Soto,* 2025 WL 2976572 at 4-7. Like in those recent cases, the government argues that it properly detained Arroyo under 8 U.S.C. § 1225(b), properly denied him a bond hearing, and did not violate his due process rights. (Doc. 7, at 1-3). Accordingly, the Court will assess whether Arroyo should be detained under  8 U.S.C. § 1225(b) or 8 U.S.C. § 1226(a) and whether Lowe violated Arroyo's procedural due process rights.

## IV.    JURISDICTION

"[F]ederal courts 'have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.'" *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 267 (3d Cir. 2016) (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006)). 28 U.S.C. § 2241 empowers federal courts to grant writs of habeas corpus where a petitioner is "in custody under or by color of the authority of the United States . . . in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(1), (3). Recently, in *Khalil v. President, United States*, 164 F.4th 259, 273 (3d Cir. 2026), the Third Circuit determined that the Immigration and Nationality Act ("INA") strips district courts of subject-matter jurisdiction to hear claims arising from removal actions or proceedings, when the claims could be addressed on a petition for review of a final order of removal ("PFR").

5

However, the Third Circuit clarified that district courts retain jurisdiction over habeas petitions presenting "now or never" questions of law, that cannot be meaningfully reviewed later on a PFR. *Kahlil*, 164 F.4th at 273-74.

Habeas actions based on whether a petitioner is detained pursuant to the appropriate statute, 8 U.S.C. § 1225(b) or 8 U.S.C. § 1226(a), and is entitled to a bond hearing are "now or never" legal questions that remain in the jurisdiction of district courts. *See Kahlil*, 164 F.4th at 274-77; *see also Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (finding 8 U.S.C. § 1252(b)(9) does not present a jurisdictional bar to challenges unrelated to review of an order of removal, the government's decision to detain in the first place, and the process by which removability will be determined). A determination of whether § 1225(b) or § 1226(a) applies to a petitioner also determines whether that petitioner is entitled to a bond hearing. *See Matter of Yajure Correa*, 29 I. & N. Dec. 126 (BIA 2025) (holding immigration judges lack authority to hear bond requests for noncitizens detained under § 1225(b)); *see Kashranov*, 2025 WL 3188399 at *5 (citing § 1226(a)) (finding § 1226(a) allows for detainees to be released on conditional parole or bond). Such claims do not arise from removal proceedings, they arise "now." If left to be raised on a PFR, the petitioner will never get the opportunity for an immigration judge to determine their eligibility for bond during removal proceedings. *See Kahlil*, 164 F.4th at 274-77 ("when [noncitizens] raise claims that courts cannot 'meaningfully' review through the PFR process, those claims do not 'aris[e] from' the 'action[s] taken' or 'proceeding[s] brought' to remove them"). Thus, the Court retains jurisdiction because the legal questions of whether § 1225(b) or § 1226(a) applies to Arroyo and whether Arroyo is entitled to a bond hearing are wholly collateral to his removal proceedings and cannot be meaningfully reviewed on a PFR. *Jennings*, 583 U.S. at 294; *Kahlil*, 164 F.4th at 274-79.

6

## V.    DISCUSSION

Lowe contends that Arroyo is subject to mandatory detention because he falls squarely under 8 U.S.C. § 1225(b)(2)(A) and is not eligible for release on bond. [3] (Doc. 7, at 1-3, 15-16). The Court will first address whether Arroyo was properly detained under § 1225(b)(2)(A) or under § 1226(a). The Court will then address whether Arroyo's detention violates due process.

### A.    LOWE IMPROPERLY DETAINED ARROYO UNDER 8 U.S.C. 1225(B)(2)(A).

Lowe improperly detained Arroyo under 8 U.S.C. § 1225(b)(2)(A), when Lowe should have detained Arroyo under 8 U.S.C. § 1226(a). (Doc. 7, at 1-3, 15-16) (stating Arroyo is detained under § 1225(b)(2)(A)). The INA is a comprehensive statute regulating immigration, which Congress has repeatedly reworked since its enactment in 1952. *Kashranov*, 2025 WL 3188399, at *1. Before 1996, the INA provided that noncitizens who presented themselves at ports of entry were subject to mandatory detention during exclusion proceedings, while noncitizens who evaded inspection by entering elsewhere were afforded the opportunity to

---

[3] The Court notes there is some confusion in the government's brief regarding the basis of Arroyo's detention. The government unambiguously asserts that Arroyo is detained under § 1225(b)(2)(A) rather than § 1225(b)(1). (Doc. 7, at 15-16). However, the government also contends that when Arroyo initially crossed the border, he was paroled in the United States and ICE later terminated his parole. (Doc. 7, at 16). Even if Arroyo was paroled into the United States, § 1225(b)(1) would not be a lawful basis for his detention because the government presents no argument or evidence that Arroyo was detained under the parole revocation procedures described in 8 C.F.R. § 212.5(e); *see Rokosky*, 2026 WL 25056, at *5 (D.N.J. Jan. 5, 2026) ("Because § 1225(b)(1) is not a lawful basis for Petitioner's detention, and Petitioner was not detained under the parole revocation procedures described under 8 C.F.R. § 212.5(e), the Court concludes he can only be properly detained under 8 U.S.C. § 1226(a), as an inadmissible alien arrested pending a decision on whether he is to be removed from the United States"). Further, Arroyo was arrested and detained by immigration officers pursuant to a warrant in accordance with the provisions of 1226(a). (Doc. 7, at 4); 8 U.S.C. 1226(a) ("On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States").

obtain release during deportation proceedings. *Matter of Yajure Correa*, 29 I. & N. Dec. 216, 222-223 (BIA 2025) (citing 8 U.S.C. §§ 1225(a); 1251 (1994)). In 1996, the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") amended the INA to include § 1225 and § 1226, in part, to end the preferential treatment of noncitizens who evaded inspection when entering the United States. OMNIBUS CONSOLIDATED APPROPRIATIONS ACT, 1997, PL 104–208, September 30, 1996, 110 Stat 3009; H.R. Rep. No. 104-469, at 225 (1996); *see Correa*, 29 I. & N. Dec. at 223. With the IIRIRA, Congress eliminated separate exclusion and deportation hearings and combined them into a single removal proceeding, regardless of where the noncitizen entered the United States. 8 U.S.C. § 1229a. Since 1996, only noncitizens who are admitted are subject to deportation, while noncitizens who have never been formally admitted are deemed inadmissible. 8 U.S.C. § 1182(a).

Pursuant to section 1225(b)(1) of the IIRIRA, when a noncitizen enters the United States at a designated port of entry or immigration authorities encounter a noncitizen "within 14 days of entry without inspection and within 100 air miles of any U.S. international land border," the noncitizen is considered an "arriving alien" and is generally subject to expedited removal, unless they indicate an intention to apply for asylum. 8 U.S.C. § 1225(b)(1)(A); *Castro v. United States Dep't of Homeland Sec.*, 835 F.3d 422, 425 (3d Cir. 2016). If the asylum officer finds a noncitizen's asserted fear of persecution to be credible, the noncitizen's asylum claim will be fully considered in a standard removal hearing. 8 C.F.R. § 208.30(f); 8 U.S.C. § 1225(b)(1)(B)(ii). Such a noncitizen is subject to detention while an immigration judge considers their asylum application; however, DHS may grant such a noncitizen parole into the United States for humanitarian purposes under 8 U.S.C. § 1182(d)(5). 8 U.S.C. § 1225(b)(1)(B)(ii); 8 U.S.C. § 1182(d)(5). However, Lowe avers that Arroyo is subject to

mandatory detention and expedited removal under § 1225(b)(2)(A), not § 1225(b)(1) because Arroyo is present in the United States without having been admitted. (Doc. 7, at 16).

Section 1225(b)(2)(A) of the INA is a catchall provision, that applies to applicants for admission not otherwise covered by § 1225(b)(1). *Jennings*, 583 U.S. at 287. Section 1225(b)(2)(A) of the INA provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained [pending removal hearings]." Pursuant to this provision, noncitizens are subject to mandatory detention while their removal proceedings are pending, but they may be released "for urgent humanitarian reasons or significant public benefit." *Jennings*, 583 U.S. at 288 (citing § 1182(d)(5)(A)); *Kashranov*, 2025 WL 3188399, at *1. To trigger § 1225(b)(2)(A), an examining immigration officer must determine that an individual is (1) an applicant for admission, (2) seeking admission, and (3) not clearly and beyond a doubt entitled to be admitted. *Martinez v. Hyde*, 792 F. Supp. 3d, 211, 214 (D. Mass. July 24, 2025), *Kashranov,* 2025 WL 3188399, at *6. Section 1225(b)(2)(A) applies only to a noncitizen who is both an "applicant for admission" and "seeking admission." *Kashranov*, 2025 WL 3188399, at *6; *Soto v. Soto*, 807 F. Supp. 3d 397, 408 (D.N.J. 2025) (collecting cases).

The INA defines an applicant for admission as a noncitizen who is "present in the United States who has not been admitted or who arrives in the United States." § 1225(a)(1); *Jennings*, 583 U.S. at 286. The phrase "alien seeking admission" is not defined in § 1225, so the Court must construe the phrase based upon its ordinary meaning and statutory context. *See Kashranov*, 2025 WL 3188399, at *6; *see also J.A.M. v. Streeval*, No. 4:25-cv-34 2 (DCL), 2025 WL 3050094, at *5 (M.D. Ga. Nov. 1, 2025). District courts in the Third Circuit and

across the country have found that "seeking admission" describes active and ongoing conduct, such as physically attempting to come into the United States at a border or port of entry. *Kashranov*, 2025 WL 3188399, at *6; *Del Cid v. Bondi*, No 3:25-cv-00304, 2025 WL 2985150, at *16 n. 7 (W.D. Pa. Oct. 23, 2025); *J.A.M.*, 2025 WL 3050094, at *3; *Ochoa Ochoa v. Noem*, No. 25 CV 10865, 2025 WL 2938779, at *6 (N.D. Ill. Oct. 16, 2025); *see Cantu-Cortes*, 2025 WL 3171639, at *2 (quoting *Vazquez v. Feeley*, No. 25-cv-01542, 2025 WL2676082, at *13 (D. Nev. Sept. 17, 2025)) (finding a noncitizen who has already been residing in the United States cannot be characterized as "seeking entry" consistent with the ordinary meaning of that phrase). This reading comports with the Supreme Court's finding in *Jennings v. Rodriguez*, 583, U.S. 281, 285 (2018), that § 1225(b) "applies primarily to aliens seeking entry into the United States," those who are "seeking admission into the country." *See Soto*, 807 F. Supp. 3d at 407. This reading also preserves a distinction between "seeking admission" and the separate term "applicant for admission," ensuring that each phrase carries independent meaning.[4] *Kashranov*, 2025 WL 3188399, at *6.

Section 1226 of the INA applies to noncitizens who are not seeking admission but are already present in the United States. *Jennings*, 583 U.S. at 288-89. Section 1226(a) provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." The Attorney General may release a noncitizen on bond or conditional parole. 8 U.S.C. § 1226(a)(2). Pursuant to § 1226(a), "[i]mmigration authorities make an initial custody

---

[4] The Court Court acknowledges that the Fifth Circuit and Eighth Circuit recently issued decisions in *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 503 (5th Cir. 2026) and *Avila v. Bondi*, 170 F.4th 1128, 1138 (8th Cir. 2026) respectively, both holding that under the INA an "applicant for admission" is necessarily someone who is "seeking admission." However, *Buenrostro-Mendez* and *Avila* are not binding on the Court.

determination, after which the noncitizen may request a bond hearing before an immigration judge." *Kashranov*, 2025 WL 3188399, at *1 (citing 8 C.F.R. § 1236.1(c)(8), (d)(1)). At their bond hearing, a noncitizen "may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community." *Nielsen v. Preap*, 586 U.S. 392, 397-98 (2019); *see Kashranov*, 2025 WL 3188399, at *1.

On July 8, 2025, ICE and the Department of Justice announced a new practice, in which all applicants for admission, regardless of when the noncitizens were apprehended, are now subject to the mandatory detention provision of § 1225(b)(2)(A). Interim Guidance Regarding Detention Authority for Applicants for Admission, https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission (last visited May 5, 2026). On September 5, 2025, the BIA adopted the DOJs new position, holding that immigration judges have no authority to consider bond requests for any person who entered the United States without admission, finding all applicants for admission are subject to detention under § 1225(b)(2)(A) and are ineligible for release on bond. *Matter of Yajure Correa*, 29 I. &N. Dec. 216 (BIA 2025). Several district courts across the country, including courts in the Third Circuit, reject this new policy and the application of § 1225(b)(2)(A) to noncitizens who have been residing in the United States for a period of time before they are detained by ICE pending removal proceedings. *Cantu-Cortes*, 2025 WL 3171639, at *2 (finding that § 1226(a), not § 1225(b)(2)(A), is applicable to a petitioner who resided in the United States for approximately 25 years before ICE detained him); *Kashranov,* 2025 WL 3188399, at *1 (finding "mandatory detention only applies for aliens who are "seeking admission," and petitioner who lived in the United States for almost two years was not seeking admission but was "already here"); *Del Cid v. Bondi,*

2025 WL 2985150 at *14-17 (finding noncitizens who had been in the United States for over two years when arrested are subject to § 1226(a) not § 1225); *Soto,* 807 F. Supp. 3d at 408 (collecting cases).

Section 1226(a), not § 1225(b)(2)(A), applies to Arroyo's detention. Arroyo should have been detained under § 1226(a) because he was arrested by immigration officers pursuant to a warrant, after he already lived in the United States for over two years. (Doc. 7, at 4); *see Jennings,* 583 U.S. at 289 ("U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2) . . . [and] to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)"); *Soto,* 807 F. Supp. 3d at 403. Section 1225(b)(2)(A) does not apply to Arroyo because Arroyo is not seeking admission into the United States, and Section 1225(b)(2)(A) applies to noncitizens who are applicants for admission *and* are seeking admission to the United States. *See Martinez,* 792 F. Supp. 3d at 214; *see Kashranov,* 2025 WL 3188399, at *6; *see also Soto,* 807 F. Supp. 3d 397, at 408. Arroyo is not actively attempting to come into the United States. Arroyo has lived in the United States since November 2023. (Doc. 7, at 3). Based on the plain meaning of the phrase "seeking admission," Arroyo sought admission when he entered the United States in November 2023. (Doc. 1, at 6; Doc. 7, at 3). Instead, § 1226(a) applies to applicants for admission, like Arroyo, who are not actively seeking admission but who have been residing in the United States for an extended period. *See e.g. Kashranov,* 2025 WL 3188399, at *1 (finding "mandatory detention only applies for aliens who are "seeking admission," and petitioner who lived in the United States for almost two years was not seeking admission but "already here"). Arroyo was also arrested and detained by immigration officers pursuant to a warrant as provided for in 1226(a). 8 U.S.C.

12

1226(a) ("On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States"). Accordingly, Lowe improperly detained Arroyo under § 1225(b), when he should have detained Arroyo under § 1226(a).

B.  LOWE VIOLATED ARROYO'S DUE PROCESS RIGHTS BY IMPROPERLY SUBJECTING ARROYO TO MANDATORY DETENTION.

Lowe's continued mandatory detention of Arroyo under § 1225(b)(2)(A) violates Arroyo's procedural due process rights. Arroyo avers that Lowe violated his due process rights by detaining him despite him being authorized to work in the United States and complying with his immigration proceedings. (Doc. 1, at 6). Lowe counters that the due process rights of noncitizens within the United States are limited to those rights and protections set forth by Congress. (Doc. 7, at 16).

The Fifth Amendment provides that no person shall "be deprived of life, liberty, or property without due process of law." U.S. Const. amend. V. The Due Process Clause of the Fifth Amendment "applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis,* 533 U.S. 678, 693 (2001). To determine whether a government action violates due process, courts apply the balancing test set forth in *Mathews v. Eldridge,* 424 U.S. 319, 334 (1976). The *Mathews* balancing test weighs: (1) the private interest implicated by the government action; (2) the risk of an erroneous deprivation and the probable value of additional safeguards; and (3) the government's interest, including administrative burdens of additional procedures. *Mathews,* 424 U.S. at 334.

The first factor, private interest implicated by the government action, weighs heavily in Arroyo's favor because Lowe has deprived Arroyo of his physical liberty through improper

13

detention without the possibility of bond under § 1225(b). *Hamdi v. Rumsfield*, 542 U.S. 507, 529 (2004) ("[T]he most elemental of liberty interests [is] the interest in being free from physical detention by [the] government."); *Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment-from government custody, detention, or forms, of physical restraint-lies at the heart of the liberty [the Due Process Clause] protects); *Soto*, 807 F. Supp. 3d at 409. The second factor, risk of erroneous deprivation and probable value of additional safeguards, also weighs heavily in Arroyo's favor because Arroyo remains erroneously detained without the possibility of release on bond pursuant to § 1225(b). *See Soto*, 807 F. Supp. 3d at 409 (citing *Barrios v. Shepley*, No. 1:25-cv-00406-JAW, 2025 WL 2772579, at *11 (D. Me. Sept. 29, 2025); *Zumba v. Bondi*, No. 25-cv-14626, 2025 WL 2753496, at *10 (D.N.J. Sept. 26, 2025)) (finding the second *Mathews* factor weighs in petitioner's favor when subject to erroneous detention without a showing from the government that petitioner presented a public safety or flight risk); *see also Kashranov*, 2025 WL 3188399, at *5 (finding the lack of any individualized assessment creates a high risk of error). The third *Mathews* factor, the government's interest, also weighs in Arroyo's favor. Generally, the government's interest in detaining noncitizens is to ensure the appearance of noncitizens at future immigration proceedings and to prevent danger to the community. *Zadvydas*, 533 U.S. at 690; *Soto*, 807 F. Supp. 3d at 409-10. Here, Arroyo poses no such risk to the government's interest in detaining him. Lowe does not allege that Arroyo poses a flight risk or danger to the community. (*See* Doc. 7). Further, Arroyo has demonstrated compliance with the immigration process by following its requirements, timely applying for asylum, and complying with the CBP One Program which was in effect at the time of his entry. (Doc. 1, at 6; Doc. 7, at 2). The government does not contest Arroyo's assertions that he has work authorization or that he has complied with all ICE's requirements.

14

(Doc. 1, at 6; Doc. 7). The government's own records show that Arroyo does not have a prior criminal history and that he followed the CBO One Program's protocol in effect at the time of Arroyo's entry into the country. (Doc. 7-2, at 2). As each *Mathews* factor weighs in Arroyo's favor, Lowe's mandatory detention of Arroyo under § 1225(b)(2)(A) violates Arroyo's procedural due process rights. Accordingly, Arroyo's petition for writ of habeas corpus is **GRANTED**, and Lowe is **ORDERED** to release Arroyo from custody.[5]

## VI.   CONCLUSION

For the foregoing reasons, Arroyo's petition for writ of habeas corpus is **GRANTED**. (Doc. 1). Lowe is **ORDERED** to release Arroyo from custody. Lowe is also permanently enjoined from re-detaining Arroyo under § 1225(b). Arroyo may move to reopen this matter if Lowe seeks to detain him under § 1226(a) and fails to schedule a timely bond hearing. The Clerk of Court is directed to close this matter.

An appropriate Order follows.

**BY THE COURT:**

**Dated: May 11, 2026**          /s/ *Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States District Judge**

---

[5] The Court notes that Lowe requests the Court order a bond hearing in the alternative to release. (Doc. 7, at 16, 43). The Court declines this request because Arroyo was detained under the wrong statute and release is the appropriate remedy. *See Patel v. O'Neil*, No. 3:25-CV-2185, 2025 WL 3516865, at *6-7 (M.D. Pa. Dec. 8, 2025) (ordering release); *see also Gonzalez Centeno v. Lowe*, No. 3:25CV2518, 2026 WL 94642, at *4 (M.D. Pa. Jan. 13, 2026) (same); *see also Quispe v. Rose*, No. 3:25-CV-02276, 2025 WL 3537279, at *8 (M.D. Pa. Dec. 10, 2025) (same).